We're going to move now to appeal 23-2690 Grant Gambaiani v. Brittany Greene. We're going to commence with oral argument on behalf of the appellant, Mr. Kern, from you. Nicholas Kern Good morning. May it please the court, my name is Nicholas Kern and I represent the appellant Grant Gambaiani. Mr. Gambaiani respectfully requests that this court reverse the district court decision to deny Mr. Gambaiani's petition for writ of habeas corpus. There are two primary issues raised in the briefs that I would like to address this morning before the court and both of those issues relate to the courtroom closure issue that is raised in this appeal. The first issue is whether the courtroom closure during Mr. Gambaiani's trial was a partial closure or a complete closure under the Sixth Amendment. The second issue is whether the record supports the State based on his attorney's purported agreement to the closure. As to the first issue, the Sixth Amendment is clear. It provides that in all criminal prosecutions the accused shall enjoy the right to a speedy and public trial. The plain and ordinary meaning of the amendment guarantees a criminal defendant's right to a trial that is accessible by the public. The text of the amendment does not qualify or limit that right. Mr. Gambaiani's trial was not open to the public during the minor victim's testimony. Well, two individuals were asked to leave. That is correct, Your Honor. The father remained. The media question was checked upon. It sounded as if it was, I don't want to call it an afterthought, but an issue that arose during the course of the trial proceedings which was then handled by the trial court. How does that raise to the level of a constitutional violation? Well, Your Honor, for several reasons. First and foremost, we have Supreme Court precedent that addresses a situation exactly like this. So in Globe newspaper, a case cited in our brief, the Supreme Court addressed a very similar situation in which a Massachusetts statute provided that it was mandatory for a trial court to close the courtroom during a minor victim's testimony in sex offense cases with the exception of individuals who had a direct interest in the case. And I understand the attempted First Amendment connection there. Here, the media just didn't sound like they were interested in the case. Isn't that a fair conclusion? Well, I think that the, we know that the media did not attend the trial. And Your Honor, it is correct that in Globe newspaper, the Supreme Court was addressing a public trial claim in the context of the First Amendment because it was the press that was challenging the statute. But the rationale of Globe newspaper was extended to criminal prosecutions in Waller. In Waller, the Supreme Court held that the protections provided to a criminal defendant under the Sixth Amendment are at least as extensive as those extended to the press and public by virtue of the First Amendment. Mr. Kern, given that we're here on post-conviction relief under 2254, is it your position to that the state appellate court's decision is contrary to any Supreme Court precedent? Yes, Your Honor. In which, contrary to is an awfully difficult standard to meet because you've got to show factual identity. Correct, Your Honor. Which case? Or an unreasonable application of clearly established rules. I'm focused on the first prompt, contrary to. So what case is the Illinois appellate court's decision from the U.S. Supreme Court contrary to? So Waller v. Georgia is directly on point. There's one rather important difference, which was that the defendant in Waller objected. That's correct, Your Honor. Is it your position that Waller requires the trial court to undertake and make those four-factor findings in the absence of an objection? So Your Honor, what we have here are two distinct issues. The state appellate court could have reasonably found, based on state law, that Mr. Gambiani forfeited his right to raise his public trial claim on appeal. It did not do that. Instead, it held that he affirmatively waived his right to a public trial, which goes to the unreasonable determination of the facts portion of the argument which we raise in the brief. Could you answer the question that I asked, which is whether you think Waller requires a trial judge to make those findings in the absence of an objection? I think that they do, Your Honor. How do you get that out of the opinion? Okay. So I guess I should clarify my answer. It's not Waller alone. It's every other case, and the cases are legioned from the Supreme Court, that every reasonable presumption is to be indulged against the waiver of fundamental constitutional rights. And the right to a public trial is a fundamental constitutional right. The state does not dispute that to be true. As a general statement, that's true, but you seem to be making an argument here for a very specific application, saying you need to have on-the-record findings consistent with the Waller factors, right? Correct. And I'm looking for a Supreme Court case that requires those findings in the absence of an objection. Your Honor, it's the combination of multiple cases that address whether or not or under what circumstances a court may find that a defendant has waived a fundamental constitutional  So by definition, it can't possibly be contrary to, on the first prong of 2254 D1, because you don't have factual identity. I mean, the Supreme Court has been as clear as day in Williams v. Taylor and in Harrington v. Richter, not on the unreasonable application of prong, on the contrary to, you need factual identity. Your Honor, I would agree that this is not a case where you have exact factual. So there's no way you can prevail under the contrary to prong. It's an unreasonable. Right. But those are two different statutory standards in 2254 D1. In other words, the state court decision denying relief, you can grant post-conviction relief if the state court decision is contrary to or reflects an unreasonable application. They're two different standards. I agree with that, Your Honor. And the argument is not that the Supreme Court has addressed this exact factual scenario. So you're not making an argument that there's anything contrary to Supreme Court precedent. You're making an argument that there's an unreasonable application of Waller, Presley, etc. Correct. That is correct, Your Honor. The Supreme Court has said that we can't extend a rationale before it can apply to the facts at hand. So by definition, the rationale would not have been clearly established under federal law. Correct. Well, I disagree with that. I mean, again, there are different pathways to get to habeas relief. One is if you have a Supreme Court case that's exactly on point, exact same factual circumstances. I would concede that we don't have that here because of the lack of an objection. But you also get to habeas relief if you can show that the district court's decision constitutes an unreasonable application of clearly established federal law as articulated by the United States Supreme Court. That's our argument here. And it... Mr. Kern, would you agree that the trial judge complied with the Illinois statute? Well, the state court held that he nominally complied with the closure statute under Illinois law, although it did have... Well, they didn't like having the prosecutor carry it out. I understand that. Correct. But the substantive decision to close was consistent with the Illinois statute, correct? Correct. Okay. I guess I'm struggling here with the position of the trial judge who's got a statute telling him to do this and nobody objecting to doing that, and you're saying it's a constitutional violation for him to just move forward without going forward and making a bunch of extra findings. I understand what Your Honor is getting at. Part of the problem here is the way that the prosecutor framed the issue. So as the court will recall, there were two trials in this case. The first trial happened. We get to the second trial. We have new counsel on behalf of Mr. Gambiani. The prosecutor, without re-noticing the motion to close the courtroom during the victim's testimony, said, Your Honor, the victim is still underage, and under the Illinois courtroom closure statute, the courtroom should be closed. That actually is not what the courtroom closure statute states. The statute states that it is the court's discretion to close the courtroom if it feels that in the interests of justice or in the best interest of the minor, the courtroom should be closed. So the prosecutor here sort of propelled this issue in the way that it proceeded. Defense counsel was taken aback, probably because he didn't know this was going to be an issue, and clarified with the court, well, if Your Honor is inclined to grant this, my client would ask that his father be allowed to remain. What the State Appellate Court ultimately held was that that constituted an agreement for the courtroom to be closed. And that's just not true. Acquiescence was the word, right? Correct. Correct. And again, that violates the basic Supreme Court precedent that every reasonable presumption is to be indulged against the waiver of fundamental constitutional rights. Well, what did we expect defense counsel to do? I mean, if he's got a problem, he knows how to object. He's not the proverbial potted plant, right? Correct. And this is a case where the State Appellate Court could have said, well, Mr. Gambiani, through the failure of his trial attorney to object, has forfeited this issue on appeal. But that's not what it held. If it had so held, this would have been raised as an ineffective assistance claim based on his attorney's failure to object to closure of the courtroom during the most important ... But the difficulty for me with what you're saying is that it's as if we are in this courtroom conducting direct review of the Illinois Court of Appeals decision. We're not. We're in 2254. And so in answering Judge Hamilton's questions, I think you have to be able to demonstrate that the Illinois Court of Appeals decision, to the contrary, at odds with what you're arguing, is beyond fair-minded disagreement. It's baseless. It's off the reservation. It's completely wrong. That's the standard the U.S. Supreme Court has handed down. Right. So, Your Honor, the Sixth Amendment says every criminal defendant has a right to a public trial. You have to focus on why the Illinois Court of Appeals decision is beyond fair-minded disagreement.  And there's two components to this. One is the waiver issue, which is addressed, again, by many U.S. Supreme Court cases that talk about what's required to waive fundamental rights. Then you have the courtroom closure issue. And here, the court ordered the courtroom doors to be barred without giving any thought to whether or not the government had articulated and authorized— So what U.S. Supreme Court—you have to come back to 2254. Whether you like it or not, this is a 2254 appeal. So what U.S. Supreme Court decision or decisions render it beyond fair-minded disagreement that limited closure of a courtroom during a criminal trial where a minor is testifying violates a Sixth Amendment right to a public trial? Your Honor, I disagree that this was a limited closure. This was a complete— It was as a matter of fact, because of what Judge Brennan observed. I disagree with that. Because in Globe newspaper— I thought there were people left in the courtroom. The U.S. Supreme Court has never— Hold on, hold on. Let's talk about the facts. Was the courtroom 100% emptied? Courtroom personnel, the parties, Mr. Gambiani, and his father—his father was the only person who was allowed to remain in the courtroom. So it wasn't a complete closure as a matter of fact. The Supreme Court has rejected the notion of a partial closure under those circumstances. In Globe newspaper, individuals with a direct interest in the case were allowed to remain in the courtroom. The Supreme Court did not say, oh, well, because individuals with a direct interest in the case are allowed to remain in the courtroom, that means that the courtroom is not closed  So the exclusion of the media in Globe newspapers was problematic. And here, the Illinois statute allows the media to be present. It does, but the media was not present. So that— It's their choice, though. It is, most certainly. But— It wasn't—is it the—in fact, the trial court did—made an effort to determine whether there was any media present, and there wasn't. That's correct, Your Honor. But the idea here is that the media can act as a proxy for the public, right? That would be the reason why— So your argument's a lot better if the local newspaper reporter is knocking on the courtroom door saying, hey, I want—we want to cover this. What do you mean the courtroom door is locked? I guess I don't follow that, Your Honor, because the Sixth Amendment does not guarantee a criminal defendant the right to have media present at his trial. His right is for—is to a public trial. And that's something that the U.S. Supreme Court has not wavered from. So there's, you know, there's conflating of some different concepts here. I think that—and I do see that I'm close to running out of all my time. We'll give you a bit of rebuttal time. I had hoped to reserve some time for rebuttal. And I understand Your Honor's concern. Our argument is that if you look at the two different strands of case law, you have the Waller strand, which addresses what's required before a courtroom may be closed, and then the other line of cases that talk about, well, what's required to waive a fundamental right? It's those two strands that the State Appellate Court here unreasonably applied in denying the public trial claim. I appreciate the Court's time. Thank you, Mr. Kern. We will give you a bit of rebuttal time. Ms. O'Connell, we'll now move to you for argument on behalf of the appellate. May it please the Court? I'm Assistant Attorney General Erin O'Connell on behalf of the Respondent Worden. I think based on opposing counsel's argument this morning, he's failed to identify a Supreme Court case that's on point, that clearly establishes a principle that the State Court in this case was either violating in a contrary to way or unreasonably applying. Two cases have been offered, Waller and Globe Newspaper, and both of those are distinguishable. Globe Newspaper was a closure to the courtroom that included the media. It was actually a media case. The media objected, and they were nevertheless excluded. That obviously didn't occur here. We had no media excluded from the courtroom. And Waller is distinguishable on two bases. The first is that there was an objection in Waller, and the second is that Waller was a total closure of the courtroom. Would we be improperly extending a Supreme Court holding or rationale if we held the trial court should have gone through the Waller criteria? I believe so. I think Waller is premised on the presence of an objection. And if a defendant has objected to a closure, then the trial court has to make certain findings and go through certain alternatives before the courtroom can be closed completely. So it would require an extension on that point. And then it would also require an extension because we don't have a total closure here. So that's another basis on which Waller is just fatally distinguishable for purposes of 2254. We did have the father present in the courtroom here. The only people that were excluded were determined to have no direct interest in the case, and we had no media that was trying to access the courtroom. So those factors just require this court to deny habeas relief under the stringent standard of 2254D. Gambiani has identified some inconsistencies in his attorney's presentation. How do you respond to those? The attorney that was present at the trial itself. In terms of how he objected or how he handled the whole issue? So the court clearly asked the defense counsel, do you have an objection? The prosecutor said, oh, the victim's about to testify. We need to clear the courtroom. The court said, do you have an objection? That was the moment for defense counsel to say, we object. Instead, defense counsel responded, we want to make sure that the victim's father is present in the courtroom. The defendant's father. Correct. Right. The defendant's father was present in the courtroom, and that was a person with a direct interest. And so the court was applying the statute and made sure that he did meet the criteria to stay in the courtroom, and so he remained. There was somewhat of a shortened proceeding, I think, maybe this gets a little bit to it, in that this was a second trial. So some of this had been litigated previously. At an earlier hearing before the first trial, there was more extensive discussion, the court discussing its discretion under the statute and how the statute worked, and the court saying, I find it's appropriate in this case. That didn't occur directly before the second trial, but that had taken place earlier with previous defense counsel. So it was a somewhat shortened proceeding, but the court had demonstrated its familiarity with how the statute worked, and it carried that forward into the second trial, and it did comply with the statute in terms of allowing interested parties to stay. Is there any evidence whatsoever that anybody showed up at the courthouse or the door of the courtroom and wanted to attend the trial? No, Your Honor. Petitioner has not produced any evidence that anyone was turned away. Let me run an impression by you and get your response if I could, Ms. O'Connell. You seem to be arguing, in essence, we should apply a kind of plain error standard here. That at the very least, there was a forfeiture of any right to keep the courtroom more open than it was, and that there's no showing that would satisfy a plain error here. I understand the petitioner to be arguing, in essence, I want to separate the questions of preservation of the issue and the substantive issue, and thereby avoid the distinction from Waller based on the failure to object, focusing maybe on procedural default, which was not relied upon by the Illinois Appellate Court. I don't know if I'm thinking about that correctly, but I would appreciate any authority you can offer to support, in essence, combining the question about preservation of the issue and the substantive right to a public trial. We're not arguing that this is a purely procedural basis, but I do think that the Supreme Court has been clear that you have to look at the context of the case in which a holding has been issued, and view that when you're under 2254D as essentially part of the case. So the failure to object can't be separated out from his argument that this was a violation of Waller. That's a critical factual distinction that we have here. I'm a little perplexed because I did hear a petitioner to concede that it would have been fine for the state court to have enforced this as a forfeiture, which is our argument is that that is exactly what they did, that they relied on counsel's failure to object at the appropriate time and found a waiver based on that. Whether you call it waiver or forfeiture, that was the essential point here. I mean, if that is consistent with Supreme Court case laws, we've argued that it is, then there was no constitutional violation here. So he is trying to separate these points out. They do come together, but I mean, really these are two separate and independent reasons that Waller doesn't apply to the facts of this case. There is the waiver and there is the partial closure. So for both of those reasons, this court should affirm the denial of habeas relief. Thank you, Ms. O'Connell. Mr. Curran, we'll go back to you. We'll give you two minutes for rebuttal. Thank you, Your Honor. There are a couple of quick factual issues that need to be clarified here. The trial court did not, in fact, invite defense counsel to make an objection. Defense counsel actually requested a peremptory ruling based on the fact that Mr. Gambiani wanted his father to remain in the courtroom during the victim's testimony. There is evidence that members of the public were excluded who wanted to attend Mr. Gambiani's  Those are the two individuals who were attending the trial and were asked to leave by the prosecutor after the law clerk and the paralegal or somebody. It was a law clerk and it was a student, I believe. So in fact, there were members of the public who were excluded from the trial based on, I mean, that's a matter of fact in the record. There is absolutely a difference between forfeiture and waiver. Forfeiture goes to whether or not an argument has been adequately preserved for appeal. Waiver involves whether or not there has been a knowing, voluntary waiver of a fundamental constitutional right. The state appellate court relied on waiver. It did not rely on forfeiture. And because it relied on waiver, the independent adequate state ground doctrine does not apply. And because it relied on waiver, relying on federal law, that's what makes that ruling susceptible to federal habeas. Can you point us to federal law and in particular Supreme Court law that would say this response is short of a waiver? Absolutely. I mean, there are several cases that talk about we are to indulge every presumption against. I'm not talking about, look, I'm not talking about general discussions of constitutional rights. I'm talking about this right. The specific.  A public trial. I don't believe that there is. I believe that, however, there have been, there are cases that apply the presumption against waiver in the context of a speedy trial claim, a trial by jury. All of those cases discuss how in order or before a defendant can make a knowing and voluntary waiver of a fundamental right, they have to know that the right exists. And that's why the circumstances of the waiver. You can waive a speedy trial by just not asking for it, right? That's correct, Your Honor. Right. And I would agree with you. A jury trial is an elaborate colloquy that's necessary. Correct. What I'm suggesting is that it's not a one-size-fits-all standard for waiver of constitutional rights in criminal prosecutions. And that's why I'm asking you for something more specific, closer to the right to a public trial that would say this is not a sufficient record for waiver. I don't believe that there is one. Thank you. To be candid. Thank you, Mr. Curran. Thank you, Ms. O'Connell. The case will be taken under advisement.